Welcome to this special setting and welcome to our courtroom that we don't use too often. We have some work going on in one of the other courtrooms so that's why you and we are here. This case is back on remand from the Supreme Court and the parties have filed briefs and we're ready to entertain argument. So this is case number 20-12547 United States Trustee for Region 21 v. Bast Amron LLP. So Mr. Bast whenever you're ready. May it please the Court, Jeffrey Bast on behalf of Bast Amron. The issue today, Your Honors, is the remedy, the appropriate remedy. The parties have proposed three options. First, order a refund as we have requested. Second, order no remedy at all as the government requests. Or third, let the government retroactively collect fees from debtors in bankruptcy administrator districts which I will refer to as BA districts. Refund is the simplest remedy and the only legally permissible remedy that addresses the harm here. I will take each of them up in order. First, the Supreme Court recognizes the long-standing presumption that a party subjected to unequal treatment is entitled to affirmative relief. The Court has consistently ordered refunds to redress constitutional injuries as we have here. We have cited the Court to the McKesson Corp case, Allegheny-Pittsburgh Cole, Iowa-Des Moines National Bank, and Montana National Bank of Billings. The only legally permissible way to remedy this constitutional harm is to order a refund and every court to consider this issue after Siegel has found that a refund is the appropriate remedy, including the Second Circuit and the Tenth Circuit Court of Appeals. This Court should order a refund today, too. Does the Court have a question? It seems to me that the only cases that have, besides the Second Circuit and the Tenth Circuit, which of course had no analysis at all and the bankruptcy judge in the Circuit City case, the only cases in the Supreme Court certainly that support a refund remedy in a case like this are cases where there was no pre-deprivation process. The cases that you rely on are cases of those tax cases primarily that involve no pre-deprivation process at all. They paid the tax under threat of seizure as in Des Moines, Iowa, Des Moines v. Bennett, and so forth. McKesson, for example, is a case like that, but it expressly says that it is the due process clause that requires either a pre-deprivation process or a post-deprivation remedy. McKesson at 110 Supreme Court, page 2250 in the right column, and I quote it, says, as an alternative to a refund, the State, and I'm quoting, the State may choose to provide a form of pre-deprivation process, for example, by authorizing taxpayers to enjoin the tax or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement case initiated by the government. And furthermore, at 2251, note 21, and I'm quoting again, the pre-deprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself, sufficient by itself to satisfy the due process clause. Now the Circuit City bankruptcy judge addressed this argument and rejected the U.S. trustee argument, same one our trustee is making, saying that it was an unreasonable risk to that the case would be converted to a Chapter 7 under, and it relied on Section 1112B1. But what that bankruptcy judge overlooked is that 1112B1 is expressly subject to 1112B2, and those two paragraphs, B1 and B2, together expressly provide that there can be no conversion to Chapter 7 unless three things happen. One, there has to be a request by a party at interest to convert, and two, have to show cause for conversion, and three, then there cannot be conversion until the bankruptcy court provides notice and a hearing. Now it seems clear to me that that is the very pre-deprivation process that the Supreme Court is talking about in McKesson that is, quote, sufficient unto itself. And I'm looking at that section, and it, in B1, it provides both that there has to be that request and showing of cause, and there has to be a notice and a hearing. And then B2 provides that at that hearing, the data, in this case Best, Amarant's client, your client, can provide establish that the grounds for converting or dismissing the case, which in this case would be the nonpayment of the fee, are reasonably justified. It seems to me that no reasonable bankruptcy judge could say and conclude in this case that not paying the fee because it's unconstitutional is a violation of the uniformity clause. It seems to me no reasonable bankruptcy judge could say that is not reasonable justification. So it seems to me there's not any risk at all, really, and certainly not a reasonable risk of a conversion to chapter. And if there were a remote risk, the data could tender the full amount into court, which of course they did in this case, but he could at the same time request that that amount be set aside in an escrow, and that the bankruptcy judge then and there determine whether or not it is a violation of the uniformity clause. Of course, then he's got his pre-deprivation process, and the case law holds if you have that, then no other remedy really is required by the due process clause, and Morales-Santana, the latest Supreme Court case, holds that in that very kind of a situation where there was a pre-deprivation process, that prospective remedy of declaring the discriminatory provision in that case a nullity, the exception only, not the general rule, and the prospective relief only is sufficient to satisfy due process. So how am I wrong? Well, Your Honor, I appreciate the court's concern. The pre-deprivation remedy that needs to be available is a remedy for challenging the tax. In the instance that the court references, the investment trustee would be subject to dismissal, the risk of dismissal, and that hearing is a hearing on dismissal, not a hearing on the tax. And the McKesson court noted that if the situation merely puts the party at a serious disadvantage, and in fact, in McKesson, McKesson suggested that this is exactly the type of circumstance in which a fee is paid under duress, when it is paid to avoid financial sanction, and certainly, as the court is aware, the investment trustee is a fiduciary. She is bound by her duty to act in the best interest of creditors, and for her to take the risk that the case could be converted. It seems to me there's no risk, no reasonable risk. Well, Your Honor, recall that the court, that the code utilizes the phrase, the word, shall. It mandates dismissal. Although it is subject to reasonable challenge, the trustee could have potentially put the case in jeopardy by taking that risk. But it is a serious disadvantage. More importantly, the courts, the tax cases have indicated that the burden cannot be shifted to the trustee, to the party challenging the tax, to seek collection or to, forgive me, Your Honor. I know that language in all of the cases, including McKesson, but those are only cases where there was no pre-deprivation process. In this case, before your client, before the client could have experienced any harm at all, he had that notice and hearing, and he had that full opportunity to show that non-payment was justified because it's unconstitutional. How can an unconstitutional imposition ever be justified? Well, Your Honor, the court would have to decide that it was not, that it was unconstitutional, and as the court is aware, many of the lower courts determined that it was not unconstitutional. The difference between you and me then is that you think there is a reasonable risk of conversion, and it seems to me there's not. Is that the difference? Well, Your Honor, I think the court needs to put itself in the shoes of a fiduciary at that time. The investment trustee is a fiduciary charged with acting in the best interest of creditors. The bankruptcy code requires that U.S. trustee fees are paid in a timely manner, so she would have had to have made a calculation according to the court's analysis and say, well, I don't believe that by not paying it, I'm really subjecting the estate to any reasonable risk. That is a serious disadvantage. To force a trustee to make a decision about whether or not she should risk the case at the jeopardy of creditors and the entire estate at that time is a serious disadvantage. I'll also note that in the USA Sales case, the parties did exactly that. They sought injunctive relief, and the government opposed . . . Which case is this? I'm sorry, the USA Sales case is the case pending in the Central District of California. Forgive me, Your Honor, I don't have the site handy, but I have it in my hand. We can find that. Don't use up any more of your time. Your Honor, in that case, the government challenged the parties' right to seek . . . they sought injunctive relief, and the government argued that there was no need for injunctive relief because the parties would be entitled to a refund. Citing to the Appropriations Act that accompanied this statute, each year the District Court in the USA Sales case from that case noted that the Annual Appropriations Act, which expressly authorizes payments of refunds from the U.S. trustee fund, the government cited to that statute and said there's no need for injunctive relief. There's no need because we have a statute here that provides for a refund. In a situation like this, we don't even have to get to the due process argument because there was a basis for . . . there's clear Congressional intent to provide for refunds payable to the trustee in this situation. If I may, I could read from the Appropriations Act, and I see that I'm out of time. Your Honor, may I . . . You can do that briefly, and then I have a question for you. Okay. For necessary expenses of the United States trustee program as authorized, $226 million to remain available until expended, provided that notwithstanding any other provision of law, deposits to the United States trustee system fund and amounts herein appropriated shall be available in such amounts as may be necessary to pay refunds due deposits. There is Congressional intent to authorize a refund. We don't even have to get to whether or not the trustee had a pre-deprivation remedy because if the Court just looks to the statute, the remedy of refund is entirely consistent with Congressional intent, and it remedies the harm at issue here. The Court has a question. Is it your position that the right to a remedy in the form of a refund is mandated not by any general due process principles or general equal protection principles, but by the Bankruptcy Uniformity Clause itself? Yes, Your Honor, and the Supreme Court struck the fee as non-uniform, provided that they shall be equal, and the Congressional and the Court's mandates are that equal treatment must be mandated during the period at issue. Does that answer the Court's question? I'm not sure I answered the Court's question. No, I think I understand it. I mean, there are cases, a lot of the cases that the parties debate and cite to us are cases involving equal protection concerns or due process concerns. They aren't cases involving the Bankruptcy Uniformity Clause, and what remedy, if any, that clause requires, mandates, or allows. Correct. I think what's unique about this case is it's a case dealing with economic injury, and there is unequal treatment typically in the uniformity cases. Unequal treatment occurs, and the cases cited by the government occurs in the context of injunctive relief. In this case, however, we're dealing with economic harm, and I would say that like the tax cases, one of the distinctions is we're dealing with permissive conduct versus mandatory conduct. In this situation, in tax cases like our remedy harm cases, the harm was caused by the government mandate, and that mandate, like the tax schemes, is that the U.S. trustee fees shall be paid under risk of dismissal, and I understand the Court disagrees with whether or not that was a reasonable risk or whether it put the trustee at a disadvantage, but in the cases cited by the government, there's no conduct mandated. They're seeking injunctive relief in the context of permissive behavior. There's no requirement to make robo-calls or to seek an abortion or to seek federal benefits, but in this instance, the U.S. investment trustee was required to pay fees on a quarterly basis under risk of dismissal of the case. Can I ask you a question about, so let's just assume that the tax cases do apply here and that there's not some special rule for uniformity remedies. The bankruptcy court's decision here says that there are actually two issues, that one was a request for a declaration that the trust is not liable for post-confirmation fees going forward, so that that was a request for prospective relief, and then two, that there was a request for a refund of fees that had already been paid. First question to you about that is, is that correct, the way this was litigated that there were these two requests? Yes, it was, because some of the fees which were constitutionally non-uniform had already been paid, and additional fees would continue to come due. So, I guess, if that's the case then, that seems to kind of cut in all sorts of different ways. One is that it seems like you did have the ability to challenge prepaying the fees because that is in fact what you did, you were challenging fees that had not been paid yet, right? Well, I think either way, had we filed a motion, we could have filed it earlier, I think it might be... Yeah, so I mean, if you had filed it earlier, then there would have never been any payment of fees, right? We would have still had to continue paying throughout the process. Well, not if the bankruptcy court had said you don't have to pay anymore, right? Correct, but they did. Yeah, right, so I'm saying, you know, I think the remedy question, we have to put ourselves in the bankruptcy court's position and figure out what was the bankruptcy court supposed to have done, right? So, you could have filed this earlier and sought purely a prospective remedy and said, don't make us pay these fees, we don't have to pay them going forward, and then the bankruptcy court, under your theory, would have said, you know, you're right, you don't have to pay these fees, right? I don't think the time would have allowed that because, trustee, the way the fee system works is the U.S. trustee issues an invoice based on quarterly reports or monthly reports that an estate files and post-confirmation quarterly reports, so the United States trustee's office issues an invoice and then the fee is due and payable. Now, the investment trustee, upon receipt of that invoice, in theory, could have filed a motion seeking relief, but the time would not have allowed the investment trustee to not pay. Why couldn't the trustee, upon receipt of that invoice, tendered the amount into court, requested the bankruptcy court to put it in escrow and determine then and there that it was unconstitutional? And McKesson, Supreme Court, at page 2254 and 2255 says that kind of an escrow arrangement can satisfy the pre-deprivation requirement. Well, Your Honor, the standard is that it has to be a meaningful opportunity with a process. That process does not exist in the bankruptcy code. It does not exist in the U.S. trustee fee statute. It's possible it might have happened, but there was not a clear remedy available to the trustee and not a remedy to address the fee issue either. Again, there's two hearings here. The pre-deprivation remedy that is contemplated by McKesson is the ability to challenge a tax, to not pay a tax, and then challenge it. Here, we're talking about not paying a fee and then defending against dismissal of the case. The defense of dismissal of the case is not a challenge to the fee. We have two divergent processes. More importantly, even if the court perhaps— Can I just ask— Please. So this issue about the dismissal of the case and whatnot, I mean, this litigation that we have this appeal from was at least in part a prospective challenge to fees that were not yet paid. So that's why I'm having trouble even understanding this argument because, I mean, in the bankruptcy court, you showed up and you said we don't want to pay these fees anymore going forward. Right. I mean, this never came up. I mean, the bankruptcy court just ruled on it. There was still no mechanism for us to withhold payment or to put it in the court. It's certainly not a clearly defined mechanism, not a process under which the investment trustee could withhold payment or deposit it into the court registry and challenge the fee. We could have—I can't disagree with the court that we could have filed the motion earlier, but we still would be in the same position today. We would have been paying the fee on a quarterly basis while this issue was litigated, and we would still be back before this court seeking a remedy for the constitutional harm. So if I could just make sure I understand what you're saying. You're saying if you had done this earlier, the only thing that would be different is just the amount of money that you were seeking from a refund. And let's say the bankruptcy court had gotten it right and ruled in your favor on the merits, right? So if the bankruptcy court gets it right, rules in your favor on the merits, you might be seeking less money as a refund because it would have happened faster, but there was no way you wouldn't have to seek some money as a refund because you would have had to continue to pay the quarterly fees? Is that what you're saying? That's right, Your Honor. And the cases that deal with a pre-deprivation remedy require that it's a clearly defined remedy available. So, again, there's no process here for withholding the fee and seeking a challenge. There is a hearing, but the hearing is a hearing on dismissal, not on... Can you address... So I feel like we skipped a question when we're talking about the refund. To me, it seems like the first question is, given that there's this uniformity problem, what is the right way to fix the uniformity problem? Is it to, you know... So let's say I were the bankruptcy judge. You come in and say, these fees are too high, these other people over here are paying lower fees than us. Why wouldn't the bankruptcy judge just say, yeah, they should be paying the higher fees too? Why would the bankruptcy judge have to say, you're right, you should be paying a lower fee? Well, the bankruptcy court doesn't have jurisdiction to order any other debtor or parties outside of its jurisdiction to order a fee, but more importantly, that would not remedy this harm. And the Supreme Court has made clear that a prospective fix is inadequate to redress that. No, no, no. I'm not talking about prospective. I'm talking about, I'm the bankruptcy court. You haven't paid a single fee. You've come in to be the bankruptcy court and you've said, we don't want to pay these fees going forward. Why wouldn't the bankruptcy court just say, you have to pay the fees going forward? It's the other people that they also have to pay the fees too. That's the problem. In the court's hypothetical, is this before the Supreme Court ruling? I mean, it doesn't matter. It's a bankruptcy court doing the right thing, right? The bankruptcy court recognizes the uniformity problem, does exactly what everybody agrees is now the law that says, this is a disuniform fee structure. We've got to fix this fee structure some way. Why doesn't the bankruptcy court have to say, the right way to fix it is for everybody else to pay the same fee that you have to pay and not that you get to pay the fee that some other people pay? Well, while it might be, the bankruptcy court just doesn't have the power to do so. More importantly, this issue was addressed by the Supreme Court and the Supreme Court said, it was not the judicial conference's error here, but rather the Congress's error. Oh, yeah. No question. Yeah, absolutely. It's a statutory problem that Congress created. But, I mean, if you look at, you know, you look at so many equal protection cases and the Supreme Court mentions this in McKesson, the idea of just imposing the tax on people who were otherwise excluded from it. I mean, in all these remedy issues, the question is, comes down to congressional intent. What would Congress have intended if they had passed a constitutional law instead of one that's unconstitutional? I guess my issue is you just seem to have jumped over that question. Your point, I think, is that in the McKesson scenario, one jurisdiction, the state, is by imposing a retroactive tax increase on the people who were favorably treated in the first place and improperly so. But here, you don't have a unitary jurisdiction. And so, the bankruptcy judge whom you're in front of doesn't have the ability to equalize  That's exactly right, Your Honor. So the judge can say, oh, those people should pay more, but is powerless to enforce that happening. And if the bankruptcy judges in the BA districts go the other way, then they won't be paying any more. That is exactly right. And it's confirmed by the Supreme Court's ruling because the Supreme Court, again, did not say, you didn't pay too much, they paid too little. The Supreme Court said, Congress created this problem. If they felt like the other parties paid too little, the court could have said, Judicial Conference got this wrong. But the Supreme Court said, Congress created this problem. All right, we've taken you way over your time, Mr. Bass. But thank you very much for the help. You've saved your five minutes for rebuttal. Thank you, Your Honor. Mr. Sandberg. Good afternoon, and may it please the court. Jeff Sandberg for the United States trustee. I'd like to pick up right with where you left off, which is the problem of you have a bankruptcy judge with jurisdiction over this bankruptcy district and figuring out what to do. Ultimately, you know, the government recognizes that this is a nationwide uniformity problem that needs a nationwide solution. And we were hoping, we were all hoping that the Supreme Court would rule, as the parties had invited it to do, but instead it's been remanded, and we are now fractured down into our respective small jurisdictions. But we do not think that the fact that the bankruptcy court may not have the power to correct the windfall that happened somewhere else means that the bankruptcy court now has authority to extend that windfall here. The question is a legal one, and there's a nationwide answer to it as to whether Congress would intend for the increased fees to take effect as to everyone, or whether Congress would intend to essentially repeal the 2017 Act by extending the benefit of the unintentionally favorable treatment in Alabama and North Carolina to everyone. Is it all a matter of congressional intent? Or is part of it driven by the mandate of the bankruptcy uniformity clause? We think the bankruptcy uniformity clause is an equal treatment guarantee along the lines of the First Amendment and the Equal Protection Clause and the Due Process Clause in some contexts. The Supreme Court in the Barr case says that there they were dealing with the First Amendment question that was an equal treatment problem. And it said, there's a whole discussion of Justice Kavanaugh's opinion that talks about equal treatment constitutional problems generally. And I don't have any bankruptcy uniformity clause precedents to point you to, because this is only the second time that the Supreme Court has ever struck down a statute as violative of that clause. And this is the first time we've had kind of a level up, level down problem to encounter under that clause. But we think the equal treatment principles that are discussed in Barr and Morales and Santana apply neatly here. And I don't really understand my opposing colleague to be disagreeing. And indeed, the opposing colleague in the Supreme Court case agreed that Morales-Santana applied an appropriate framework and just would have reached a different conclusion under that framework. So I think for the reasons stated in Judge Brasher's prior concurrence, perhaps the easiest way to resolve the case is to just say, well, even assuming any retrospective relief would be appropriate at all, it's clear that it's not a refund to the thousands of debtors in the 88 U.S. trustee districts. The remedy would lie in the bankruptcy administrator districts. And, you know, we agree as the government it's not incumbent on Bass Dameron to go out and pursue additional collections. That's what Allegheny says. That's what Iowa-Des Moines Bank says. That's what Montana National Bank says. It is the government's responsibility to pursue those additional collections if they are needed. And hopefully, one way or the other, the Supreme Court will ultimately tell us if that's right and certainly if this court agrees with our arguments, we think your court will be unlikely to have the last word because we would then have a circuit split. But at this point, the Supreme Court, you know, didn't answer the question itself. It wanted litigation on the level up versus level down issue. We haven't been, you know, we haven't encouraged bankruptcy administrators to start doing collections because that would be chaos and multiply the litigation. What we need now is judicial resolution of the question of whether the solution lies in striking the unconstitutional exception or instead striking down the general rule. And we just think for the reasons given in all of the opinions in this court's prior opinion, although you reach different doctrinal conclusions, I think you all recognize that what Congress had been intending to do all along and maybe failed to adequately embody in the statute as Judge Brasher correctly anticipated the Supreme Court's ruling would be, Congress nonetheless intended this fee increase to go in effect everywhere, as prior fee increases had done. And so it would be destroying the law rather than salvaging it as Supreme Court precedent instructs courts to do when you identify an unconstitutional problem. We haven't touched upon this issue, but I don't want the argument to finish up without at least addressing it. I don't understand your brief to be making a sovereign immunity argument. Am I right about that? That's right. We haven't contested that the court, if the right answer as a matter of substantive constitutional law is that they should be paid a refund, we would do that. There's also litigation pending in the Court of Federal Claims right now under a Tucker Act illegal exaction theory. So we haven't contested that. But we pointed to sovereign immunity in our brief just for the more general point that, look, just because this is about economic rights doesn't mean that somehow the money tap turns on more readily. If anything, it's sort of a different starting presumption. But you presented it as a reason why, in this sort of case, retrospective refund relief may not be appropriate. Right. Well, just as a general matter, when you prove that the government has done something unconstitutional, it doesn't automatically follow from that that you get a monetary remedy. And we're trying to make the more modest point that just because Morales-Santana and the robocalls case are about something other than money doesn't mean that you throw those cases out the window because we're dealing with money here. Because, if anything, money is ordinarily harder to get against the government. We haven't contested this case. I would like you to respond to his argument. Apparently, I'm understanding it, I didn't see it in the briefs, but he cites the U.S. sales case in the Bankruptcy Court apparently in California. And he suggests, I'm not sure he suggests this, but he seems to suggest that wholly aside from due process, which we know due process can be satisfied either with pre-deprivation process or post-deprivation refund. But he suggests that aside from that, some bankruptcy act or something has authorized or indicated that there should be a refund in this case rather than increasing the fee in the bankruptcy administrator districts. So I understand that there's basically two answers to that question. It's important, I think, that I can get them both out. The first one is with USA Sales, I apologize, I don't have that filing in front of me and I'm not sure what exact injunction had been set up there. Talk a little bit slower and a little bit louder. I've got an infection and so temporarily got some problem with this hearing. So start over. My apologies. What did you just say? So with respect to USA Sales, that was one of the many cases in which debtors were challenging the fees. I don't recall what precise relief the debtor there had sought by way of injunction. I take Mr. Bass's word for it that they had sought an injunction of some kind and that we had opposed that. There are other cases in which debtors have worked out an escrow arrangement along the lines of what Your Honor suggested earlier in Clinton Nursery's money disputed funds were paid into escrow where they still remain. There was a case in the Fifth Circuit called NRG 21 where the debtor simply, as soon as the debtor filed the motion seeking a determination of fee liability, the debtor simply stopped paying the disputed fees going forward and we didn't challenge that. So I apologize that I don't know precisely what happened in USA Sales. We do think the general point that the due process clause doesn't require retrospective relief here is correct. You don't know of any authority other than the due process clause that would require a refund in preference to an ability to get the issue solved before he ever paid any fee. If he had challenged in the first quarter of 2018, put it before the bankruptcy court, he never would have had to pay the fee if the bankruptcy court decided in the right way, we now know from the Supreme Court. You don't know of any other provision that says that the bankruptcy debtors absolutely have to pay and can't challenge a fee? Our belief is that the debtor in this case, or the investment trustee as it was at the time, had the ability to withhold the funds if the investment trustee wanted to and the investment trustee, even after filing the motion, continued to pay the funds. I think, though, that ultimately the right answer to this is going to be a national answer and it's ideally not going to turn on case-specific questions of who preserved, who chose to get an escrow. We do think it's right as a general matter that there is no constitutional right to a retrospective remedy unless you are made to pay fees under duress, which we don't think was true here. But even if you do need a retrospective remedy, McKesson and all of the other cases that my opposing colleague cited all recognized that the court retrospectively can either go back and pursue additional collections from the people who underpaid or you can give refunds to the people who overpaid. And so here you end up getting to the same second-level question of would Congress indisputably have the authority to require the bankruptcy system to be self-funding and to put in a fee increase that was necessary to save taxpayers from having to pay for the bankruptcy administration system? Would Congress intend for the increased fees to apply nationwide or would it intend not to enact that fee increase at all? How do you factor in the inability of a court, the court, to do that equalization given its lack of jurisdiction over parties in BA districts? There are two answers to that. The first is that the Supreme Court has said that parties have standing to sue to eliminate a favorable treatment given to others. So I think, as Judge Brasher had pointed out in his prior concurrence, that if Mr. Bass wanted this particular vehicle, this case, to be the vehicle for fixing the problem nationwide, he could have added the judicial comments as a party. But I also don't think it's incumbent on him to do that. I think that courts, as a matter of precedent, and things being appealed up through the Supreme Court, ultimately the Supreme Court says just as a matter of precedent what the right answer is and then the bankruptcy administrators being part of the government will fall in line and do that. So I don't think it's incumbent on him or on the bankruptcy judge or on this panel to be the one to enjoin higher collections in the Alabama and North Carolina districts. That will follow as a matter of precedent once you get high enough in our system or we otherwise get a definitive ruling that that's the right legal answer. But you wouldn't ever have a level up versus level down analysis if the fact that you can't act on people who are getting the favorable treatment elsewhere was an impediment to the court's ability to reach the right answer. Right, because that's going to happen all the time. People who are getting favorable treatment are always not going to be parties to the case between the person who's not getting the favorable treatment and the government, right? That's always the way it is. That's right. So the Supreme Court in Barr said, look, you can actually go out and sue the people who are responsible for the favorable treatment to others if you want. You have standing to pursue them. But we also don't think it's incumbent on them to do that here. I think we can litigate the right legal answer to the constitutional defect that was identified in Siegel. Can I ask you a question about the procedural posture here? So I'm trying to work through in my head how the different arguments sort of fit. But part of their request in the bankruptcy court was stop making us pay this fee going forward. Part of their request was give us back the money we'd already paid. This was not a refund action. They were not waiting until they paid the fee and then seeking the money back. They were seeking to stop going forward. What do we do with that? Do your arguments about retrospective relief even matter for their arguments in the bankruptcy court about not paying the fee going forward? They still do because they didn't seek an arrangement where the money wasn't paid to the U.S. trustee. I mean, ultimately, although they filed that motion, they continued to pay after that rather than withholding payment, rather than putting it in an escrow. But I think this may be a reason why the easier path is the one that's already trod by Your Honor's prior concurrence, which is that even if there are debtors who timely objected, the right answer to this problem nationwide is to level up rather than level down. I want to make sure I answered the other part of Judge Anderson's question before about the statute that my opposing colleague pointed to. That is every year when Congress provides appropriations to the Department of Justice, including the United States trustee program, it includes this language that says such amounts as may be necessary to pay refunds due depositors are authorized to be spent from the United States trustee system fund. That's a provision that says just in the ordinary course of estimating disbursements and estimating payments, and there's accounting reconciliations that have to happen all the time. And so sometimes the United States trustee owes a little bit because it overestimated the amount of disbursements that were made in a quarter. It's just a function of the timing of all of this when all of this happens and accounting reconciliations happen. And actually, in the most recent Appropriations Act that was enacted by Congress, there's an explanatory statement that was approved by both houses of Congress that said, yeah, that language, we don't actually understand that to apply to constitutional litigation against the United States trustee program. We understand that to apply to the kind of accounting true ups that happen in the ordinary course. And I apologize that we haven't called that to your attention with the 28-J letter before this. But you have a slide for that. I do not have it handy. If it would be helpful, I can follow up with a letter to your honors. Sure. If you could take the lead with that, Mr. Sandberg, so how long do you need to put all that together in a 28-J letter? I could do it very quickly, your honor, maybe a week, 48 hours, however long your honors need. Okay. How about until close of business next Tuesday? Okay. And then, Mr. Bass, you have until the following Tuesday to respond. So the gist of what you just said is that appropriations language is kind of a boilerplate and certainly does not countermand the clear intention of Congress as expressed in the history of the origin of this 1938-7 and the history of the increases in 07, for example, where the increase in A6 fees automatically flowed over as a practical matter to the B.A. districts. It certainly does not reflect any congressional intent. It does not countermand that congressional intent that we laid out in our prior opinion and the Supreme Court seemed to agree with in their footnote, too. That's right. I wouldn't characterize that provision as boilerplate because it's actually important. We can't pay money back out to anyone unless Congress authorizes us to. And so since 1986, we've asked for that language to be in there. So just if it turns out we overestimated someone's disbursements and so then they overpaid and we got $5,000 more than we should, we want to be able to give that back to them, just in the ordinary course and the functioning of a constitutional scheme. And it's just the most recent explanatory statement, which we'll address in the letter, points out that that's all Congress has ever intended to do with that provision. It wasn't intended to dictate a particular constitutional remedy. Could I ask you a practical question? So in my concurrence, I think I said there were six districts where the lower fee applied and something like 88 districts where the higher fee applied. This fee only applied, the higher fee only applied to bankruptcies, I believe, over a million dollars in disbursements or something like that? On a quarterly basis. On a quarterly basis. Do you have any numbers, any way to figure out numbers? So we're talking about six districts that paid the lower fee, bankruptcies in those districts that had over a million dollar disbursements on a quarterly basis would have paid the higher fee if the higher fee applied to them, right? Were there any bankruptcies in those districts that would have met that? I mean, we're talking about Alabama and North Carolina, not California, New York, and Delaware. So I just, I don't know. Is there any way to know that? We don't know, but we've done kind of a back of the envelope calculation with what we do know. We know how many Chapter 11 filings there were in every district nationwide. We know in the 88 U.S. trustee districts what percentage of those Chapter 11 cases were big enough to impose this problem. So if you take the percentage of, you know, big cases in the U.S. trustee districts and you multiply it by the number of Chapter 11 filings in Alabama and North Carolina during the relevant period, we arrived at a population of an estimate of 60 cases or less. We don't know if that number is right. It could be higher. It could be lower. We don't know how many of them are still pending. We recognize that in some of them there may be case-specific due process or retroactivity or other practical problems that might make it hard to recover. But, you know, by hypothesis, some of those cases could still be open. It could be easy to collect in them. McKesson requires only a good-faith effort if you choose to go back and pursue additional collections. And so we think that that practical concern shouldn't not be a reason to follow the course that we're setting out. And, indeed, if anything, it's going to be far easier to act on a population of 60 cases, give or take, than to issue refunds in thousands of cases. Yes. That's what I was going to ask you. So if we look at – so those are the six districts. Like I say, I mean, I'm familiar with the kind of the bankruptcies in Alabama, and I would be surprised if they were – if the number met the national average for over a million-dollar disbursements in a quarter. So 60 districts, give or take, nationwide in the 88 districts, you think it's thousands? It's thousands. I don't have the exact number with me, but it's in the thousands. So then on a practical matter, you would say that, you know, we would be looking at trying to impose a higher fee in 60 cases versus issuing refunds in like a thousand cases. Right, right. But, you know, ultimately, whatever happens as a practical matter, there's not going to be absolute uniformity here. You know, even if the right answer as a matter of law were refunds on the other case's side, you know, some of those debtors are long gone. It's not clear anyone would ever come forward. It's not going to be possible for anyone to wave a magic wand and get everything back to true equality. So we think you just need to start with the legal baseline, which is what would Congress have intended, and then you undertake your best efforts from there in good faith down whatever road that points you towards. And there is a road to be trod if the right answer is to act on the 60-odd cases in the bankruptcy administrator districts rather than on the thousands of cases in the U.S. trustee districts. But just know that either way, you're not going to reach, you know, perfect uniformity. The last, I see I'm out of time. If there's just one more point I could make, which is just that at this point, the Tenth Circuit has denied rehearing en banc in the John Q. Hammond's case, and so the government's cert clock is running. And so certainly we would, as this court provided, you know, an added voice to the conversation before that, in the government's view, is very helpful. If this court finds it helpful to issue a decision in this case, we would certainly welcome it. But our certiorari deadline right now in the Tenth Circuit is April 26th. I didn't quite understand. Your certiorari deadline in what case? Our certiorari deadline in the Tenth Circuit is April 26th. And certainly one of the factors that we think about, the Supreme Court thinks about, is whether there's any agreement on the circuit. What about the Second Circuit case? What about the Second Circuit case? The Second Circuit, we have a petition for rehearing en banc pending. Okay. That is just essentially ask them, even if you disagree with us, please just issue a decision that lays out more fully your reasons for disagreeing with us. And as I understand it, there is an appeal, a very recent appeal to the district court in the Circuit City case from the bankruptcy judge there. That will be a direct appeal to the Fourth Circuit. That's just been authorized. Oh, a direct appeal to the Fourth Circuit. As we speak, there will be, I think, a joint certification filed. So we're trying to get back up as high as we can. Again, we wanted a ruling from the Supreme Court in the first instance. The Supreme Court seemed to want reasoned decisions on this remedies issue. We're a little bit frustrated that the Second and the Tenth Circuits, even though they ruled against us, didn't say all that much about their reasoning. And so we're hoping for a reasoned decision on this and that we can ultimately wrap up the litigation sooner rather than later. Because we recognize that bankruptcy debtors and their professionals don't have lots of extra money to spend on this. That can be a distraction from— You want to go to mediation, perhaps? And tell us a joke. Yeah, the government never goes to mediation. I've settled many cases with the Kindred Mediation Center, Your Honor, but this is not one where I think it's going to be fruitful. All right, thank you very much, Mr. Samper. Okay, Mr. Best. Thank you, Your Honor. I would like to start with the last point Council made about thousands of cases. This is 48 states versus two states. The suggestion is that it would be easier to collect in two than refund in 48, but that ignores the obvious difference between those two remedies. Refunds are simple, and the burden is on the estate to seek a refund. We're aware of only 12 cases nationwide that have sought a refund. Five of those have already been discontinued. So only seven remain, and each refund involves a single payment to a single debtor or trust. Of course, the court doesn't need to address all those. There's only one here today. Second, congressional intent does not support this notion of a retroactive collection action in VA districts. In 2021, the court is aware at a time when this issue was already being litigated nationwide and several courts had already held the increase to be unconstitutional. Congress amended this fee statute, the fee scheme, to compel uniform fees prospectively. It could have ordered the judicial conference to retroactively nullify the favorable past treatment, but they did not do that. Now, I have to admit that Congress also could have ordered refunds in the U.S. trustee districts, and it's the same reason that the bankruptcy court in Siegel after remand found that congressional intent was awash. But, as noted, I mentioned before, the district court in USA Sales did reference the Annual Appropriation Act, which expressly authorizes payment. Now, counsel suggests that there have been more recent quotes from Senator Leahy suggesting that that was not the purpose of that language. The language is clear on its face. It says, notwithstanding any other provision of law, deposits to the U.S. trustee fund and amounts appropriated shall be available in such amounts as may be necessary to pay refunds. There is no intent to support retroactive collection from VA districts, but there is. In fact, and I apologize to the court, I misspoke about where the government raised this issue. I suggested that it was USA Sales, but it was actually the MF Global case in the Southern District of New York, and the government cited to that language in opposing the debtor's claim for set-off and injunctive relief in that case, and I quote, MF Global does not need set-off or injunctive relief in any event because the statute appropriating funds to the United States trustee program addresses refunds. And the government continued, should MF Global prevail on its claim, the government will refund any overpayments. So it's clear that Congress intended the U.S. trustee fund to be available to pay refunds due to depositors. What you've just quoted is the U.S. trustee statement in some brief, in some case. That is correct, and it's not binding. I just raised it to reference the point that if we had sought an injunction, that is a position the government would have taken, but more importantly, the government recognized in that case that refunds are available under the statute, and I also would note that U.S. trustee fees are not paid on estimates. They're paid on actual monthly reports that debtors and estates file with bank statements attached to them, and then the U.S. trustee issues an invoice, and there's payment, and I'm not suggesting that there may not be circumstances where a refund is ordered in those scenarios, but to suggest that the refund we seek is not available under the Appropriations Act, it's not supported by the plain language of that statute. Can you address a question for me? Judge Jordan raised the question of is there some kind of remedy under the uniform provision of the bankruptcy clause? The only other case from the Supreme Court is the case where the Supreme Court said that a special provision for railroads was unconstitutional. Didn't the Supreme Court strike down that provision that was unique to railroads and not extend the special treatment that was given to railroads to everybody else? I believe, Your Honor, that the court upheld that provision because it was geographically unique, but I'm going off memory. Okay. All right. Well, that's fine. So I did want to point out, again, as the court's aware, that under the Iowa-Des Moines case, Allegheny, and McKesson, the government cannot shift the burden to the injured party. One other point I wanted to make, Your Honor, about the suggestion that congressional intent that this refund would jeopardize the program, I would like to point out that there is 28 U.S.C. 585—I see that I'm out of time. May I just complete this last— This U.S. trustee fees paid from Chapter 11 are not the sole source of revenue for this program. 28 U.S.C. Section 589 provides 10 different sources of funding. And while the quarterly fees under 1938-6 may be the largest, it's not the only one. And we're not seeking a refund of all fees paid, just the excess fees. And most importantly, Congress has made it clear that they have a powerful mechanism for generating funds when necessary. The 2017 amendment contemplated this increased collection level from 2018 through 2022. But by the end of 2020, they had already reached the level and increased the threshold from $200 million to $300 million and reduced the top-level fee from 1% to 0.8% above $1 million. So if there was a risk to the program, Congress knows how to remedy that risk. And finally, Your Honor, I wanted to point out to address the Court's initial question about due process. I did make this point, but I wanted to cite the Court to a case on due process, that due process requires a clear and certain remedy that is known to the parties. And I would cite the Court to the Reich v. Collins case at 513 U.S. 106 for that standard. And again, I submit that had I had that conversation as counsel for the investment trustee, had I had that conversation without revealing attorney-client privilege about should a fiduciary risk the estate in the face of a statute that says that the case shall be dismissed, the cautious thing to do would be pay the fee and challenge it. And that's exactly what we did here. And the only way to redress the remedy, the harm, the constitutional harm that was done here, is to issue a refund. It's a simple remedy, it's an elegant remedy, and it's the only one that cures this harm. Thank you. Before you sit down, Mr. Bass, let me make sure I got this right. In your initial argument, you thought it was the USA Sales case in which the government opposed injunctive remedy and suggested that a refund was available. But now you think that that really happened in the MF Global case. Is that right? That is correct. It's the MF Global case. I could give the Court a cite. You don't have to because here's what we're going to do. So you're going to file a 28-J letter next Tuesday of your own. You're going to be the first one on this issue with regards to that. And, Mr. Sandberg, you've got until the following Tuesday to respond to that 28-J letter. You've got the first 28-J letter with regards to the appropriations bill, and Mr. Bass will respond to that on the following Tuesday. So you each have submissions due next Tuesday, and then you each have responses due to each other's submissions the following Tuesday. Does that make sense? Fair enough. Okay. Thank you, Your Honor. All right. Thank you very much for the help. We appreciate it. Thank you.